******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# CITY OF WATERBURY *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT ET AL.
## (AC 44635)

Cradle, Suarez and Harper, Js.

*Syllabus*

The plaintiff employer, the city of Waterbury, appealed to this court from the judgment of the trial court dismissing its appeal from the decision of the Board of Review of the Employment Security Appeals Division (board), which affirmed the determination by an appeals referee that the defendant claimant was entitled to certain unemployment compensation benefits. The claimant, who had been a firefighter for the plaintiff, was discharged from his employment after testing positive for marijuana in a random drug test. The plaintiff alleged that the positive drug test was in violation of a "last chance agreement" that the claimant had previously made with the plaintiff and the claimant's union and other employer policies. The plaintiff contested the claimant's claim for unemployment benefits, asserting that the claimant had been discharged for wilful misconduct under the applicable statute (§ 31-236 (a) (2) (B)). The appeals referee determined that the claimant was a qualifying patient and had been using palliative marijuana prescribed by a physician for post-traumatic stress disorder in accordance with a provision (§ 21a-408p) of the Palliative Use of Marijuana Act (§ 21a-408 et seq.), and that the plaintiff had failed to allege that the claimant was discharged because he was impaired on the job, in possession of marijuana at work, or selling or trading drugs. The referee further determined that the claimant was not discharged for wilful misconduct because the plaintiff did not demonstrate that the claimant was discharged because he had been disqualified under state or federal law from performing the work for which he was hired as a result of a drug or alcohol testing program mandated by and conducted in accordance with such law. The board affirmed the appeals referee's findings, reasoning that, to the extent the last chance agreement contained a blanket prohibition against the use of palliative marijuana, without specific consideration of the claimant's fitness for duty, the agreement was unreasonable as of the date of the claimant's discharge based on the protections of § 21a-408p (b) (3), which provides that an employer cannot discharge a person solely on the basis of his status as a qualifying patient under the act. The board further concluded that the physician's prescribing palliative marijuana for the claimant's medical condition constituted good cause or a mitigating circumstance for the claimant's violation of the last chance agreement, which prevented the board from finding that he committed wilful misconduct. The plaintiff appealed the board's decision to the trial court, which, having found that the claimant fell under the protections of § 21a-408p (b) (3), granted the motion for judgment of dismissal filed by the named defendant, the Administrator of the Unemployment Compensation Act. *Held* that contrary to the plaintiff's claim, because the legality of the claimant's discharge was not at issue and the issue before the board was whether the claimant's violation of the last chance agreement constituted wilful misconduct that disqualified him from receiving unemployment benefits, § 21a-408p (b) (3) was relevant to the reasonableness of the last chance agreement, on which the plaintiff based its claim that the claimant was discharged for wilful misconduct, and, therefore, the board properly considered it in the resolution of this case; moreover, because it was undisputed that the claimant was a qualifying patient entitled to protection under § 21a-408p (b) (3), the claimant was likewise entitled to protection against employment penalties resulting from his legal, off-duty use of medical marijuana; furthermore, the board reasonably concluded that, insofar as the last chance agreement operated to allow the plaintiff to terminate the claimant's employment for his palliative use of marijuana, it was unreasonable, and the unreasonable application of the last chance agreement to the claimant's palliative marijuana use foreclosed the possibility that the

claimant's employment was terminated for wilful misconduct.

Argued September 7—officially released November 29, 2022

*Procedural History*

Appeal from the decision of the Board of Review of the Employment Security Appeals Division affirming the decision of the appeals referee that the claimant was entitled to unemployment compensation benefits, brought to the Superior Court in the judicial district of New Haven and transferred to the judicial district of Waterbury, where the court, *Hon. Joseph H. Pellegrino*, judge trial referee, granted the named defendant's motion for judgment and rendered judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Daniel J. Foster*, corporation counsel, for the appellant (plaintiff).

*Richard T. Sponzo*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare Kindall*, solicitor general, and *Matthew LaRock*, deputy associate attorney general, for the appellee (named defendant).

*Opinion*

CRADLE, J. The plaintiff, the city of Waterbury, appeals from the judgment of the trial court, rendered in favor of the named defendant, the Administrator of the Unemployment Compensation Act (defendant), dismissing the plaintiff's appeal from the decision of the defendant Board of Review of the Employment Security Appeals Division (board). The board held that the defendant Thomas F. Eccleston II (claimant) was eligible for unemployment benefits because he was not discharged for wilful misconduct, even though he tested positive for marijuana use. On appeal, the plaintiff claims that the board (1) erred in finding the Palliative Use of Marijuana Act (PUMA); see General Statutes § 21a-408 et seq.;[1] and specifically General Statutes § 21a-408p,[2] applicable to the present case, and (2) erroneously concluded that the claimant was not discharged for wilful misconduct. We disagree and, therefore, affirm the judgment of the court.

The following undisputed facts and procedural history are relevant to our resolution of the plaintiff's appeal. The claimant was employed by the plaintiff as a firefighter beginning in 1995. On November 23, 2015, in light of his issues with alcohol abuse and domestic violence, the claimant entered into a last chance agreement with the plaintiff and his union. The last chance agreement contained several stipulations regarding the claimant's employment, including one that stated the claimant "may be subject to immediate termination . . . [i]f [the claimant] tests positive for alcohol (at the level of 0.04 or above) or a controlled substance." Subsequently, the claimant was prescribed and began lawfully using medical marijuana in compliance with the terms of PUMA. Following a random drug test administered on March 20, 2018, the claimant's employment was terminated for testing positive for marijuana, a controlled substance, in violation of the last chance agreement and other employer policies.

On April 28, 2018, the claimant submitted a claim for unemployment benefits to the defendant. The plaintiff contested the claim for benefits, asserting that the claimant had been discharged for wilful misconduct under General Statutes § 31-236 (a) (2) (B)[3] for violating the last chance agreement by testing positive for a controlled substance. On June 19, 2018, the defendant concluded that the claimant was discharged for wilful misconduct and denied his claim for benefits. The claimant appealed the defendant's decision to the Employment Security Appeals Division (appeals division) in June, 2018, arguing that he was not discharged for wilful misconduct.

Following a hearing before the appeals division on August 6, 2018, an appeals referee for the appeals division reversed the defendant's decision. In an August

29, 2018 memorandum of decision, the appeals referee set forth the following findings of fact: "The claimant was employed by [the plaintiff] since 1995, most recently as Fire Lieutenant. On April 23, 2018, the [plaintiff] terminated the claimant after he exercised a leave of absence from March 28, 2018, until this formal separation. . . . On March 20, 2018, the [plaintiff] randomly tested the claimant for drugs. The claimant tested positive for marijuana, triggering a leave of absence and eventual termination. . . . The [plaintiff] terminated the claimant citing violation of the last chance agreement dated November 19, 2015; the Substance Abuse Testing Policy (Collective Bargaining Agreement); the Agreement between the city of Waterbury and the Local 1339, IAFF, AFL-CIO, and the [plaintiff's] Random Drug Testing Policy. . . . During February, 2018, the claimant obtained a prescription for medical marijuana in connection with [post-traumatic stress disorder]. As confirmed by the Connecticut Department of Consumer Protection, letter dated March 6, 2018, the claimant holds [a] medical marijuana Registration Card, valid January 31, 2018, through January 31, 2019. The claimant never used prescription marijuana within [twenty-four] hours of reporting for duty. . . . The claimant only used prescribed marijuana outside of work. . . . The [plaintiff] never charged the claimant with being or appearing intoxicated while on duty. . . . The claimant entered [into] a last chance agreement on November 19, 2015, whereby any positive test for alcohol or a controlled substance will trigger immediate termination. . . . An underlying policy of the rule is that THC levels may not be accurately detected at any given time and that the danger posed by the position requires clear thinking at all times."

In its conclusions of law, the appeals referee noted that "[i]t is undisputed that the claimant in the case before us has been designated by his physician as a qualifying patient suffering from a medical condition and that he was prescribed medical marijuana in accordance with [§] 21a-408p."[4] The appeals referee determined that the plaintiff had "failed to allege . . . that the claimant was discharged because he was impaired on the job" or that "the claimant was in possession of marijuana while at work, or that he was selling or trading drugs." (Emphasis omitted.) Finally, the appeals referee concluded: "Because the [plaintiff] did not demonstrate that the claimant in this case was impaired at work or discharged because he has been disqualified under state or federal law from performing the work for which he was hired as a result of a drug or alcohol testing program mandated by and conducted in accordance with such law,[5] it has not established that the claimant was discharged for wilful misconduct in the course of the employment." (Footnote added.)

On September 19, 2018, the plaintiff appealed the decision of the appeals referee to the board. The board

adopted the appeals referee's findings of fact and added the following relevant amendments: "We add the following sentence to the referee's finding of [fact]: The claimant was dependent on alcohol at the time that he entered into the last chance agreement. We modify the referee's [last] finding of fact . . . as follows . . . . On March 30, 2018, the claimant's physician performed a fitness for duty test and found that the claimant was fit to perform his job as a firefighter without restrictions." (Internal quotation marks omitted.)

The board affirmed the decision of the appeals referee and, in doing so, reasoned: "[T]here is no evidence in the record, or claim by the [plaintiff] that it was mandated to conduct random drug tests on its firefighters by either state or federal law, and therefore the claimant is not disqualified from receiving benefits pursuant to [§] 31-236 (a) (14).[6] . . . The board has previously ruled that a claimant's violation of an employment agreement to participate in a drug treatment program as part of a return-to-work agreement without good cause or excuse may constitute wilful misconduct. . . . [PUMA] prevents an employer from discharging an individual solely on the basis of the employee's status as a qualifying medical marijuana patient. See General Statutes [§] 21a-408p (b) (3). Such act does not restrict an employer from prohibiting the use of intoxicating substances during work hours, or being under the influence of intoxicating substances during work hours. [See General Statutes § 21a-408p (b) (3).] In response to the board's request for written argument, the [defendant] maintains that an employee's status as a safety-sensitive employee does not, in and of itself, cause such employee to fall outside the protections of § 21a-408p (b) (3). However, the [defendant] notes that a medical review officer (MRO) is required to report a positive test for marijuana to a third party, such as the employer, if the employee's continued performance of his or her safety-sensitive function is likely to pose a significant safety risk, see 49 C.F.R. § 40.327, at which time the employer may require a fitness-for-duty test.

"In the instant case, the [last chance] agreement was signed prior to the legislature's approval of medical or palliative marijuana, and was reasonable at the time based on the claimant's alcohol dependency. However, to the extent that the last chance agreement contained a blanket prohibition against the use of palliative marijuana, without specific consideration of the employee's fitness for duty, such agreement would be unreasonable as of the date of the claimant's discharge on April 23, 2018, based on the protections of [§] 21a-408p (b) (3). Moreover, the claimant's physician's prescribing palliative marijuana for the claimant's medical condition constituted good cause or a mitigating circumstance for the claimant's violation of the last chance agreement, which prevents us from finding that he committed wilful misconduct.

"To the extent that the [plaintiff] maintains that it did not discharge the claimant solely for his status as a qualifying patient, we do not need to determine whether the [plaintiff] violated § 21a-408p (b) (3). Rather, we only need to determine whether the claimant's violating the last chance agreement constituted wilful misconduct such that he is disqualified from receiving unemployment benefits. While the [plaintiff] argues that the claimant failed to disclose his medical condition or his prescription until the [plaintiff] received the positive drug test, it cites no specific provision requiring such disclosure in the last chance agreement." (Citations omitted; emphasis omitted; footnote added.)

Thereafter, on March 18, 2019, the plaintiff appealed from the decision of the board to the trial court in accordance with General Statutes § 31-249b[7] and Practice Book § 22-1 et seq. On appeal to the trial court, the plaintiff argued that the board erred when it transformed the issue of whether the claimant breached the last chance agreement into one of determining "whether a finding of a breach was foreclosed by the protections of [PUMA]." On January 14, 2021, the defendant filed a motion for judgment seeking dismissal of the plaintiff's appeal. After hearing arguments on the defendant's motion, the court rendered judgment in favor of the defendant and dismissed the appeal on March 29, 2021. In its memorandum of decision, the court concluded that it could not ignore "the language of § 21a-408p (b) (3), which very clearly states that an employer cannot discharge a person solely on the basis of his status as a qualifying patient under [PUMA]" and, further, that the claimant fell under those protections. This appeal followed.

On appeal, the plaintiff claims that the trial court (1) erred in adopting the board's finding that § 21a-408p was applicable to the present case and (2) erroneously affirmed the board's decision, which concluded that the claimant was not discharged for wilful misconduct.

We begin by setting forth the relevant legal principles and applicable standard of review. "In the processing of unemployment compensation claims . . . the administrator, the referee and the [board] decide the facts and then apply the appropriate law. . . . [The administrator] is charged with the initial responsibility of determining whether claimants are entitled to unemployment benefits. . . . Appeals are taken to the employment security appeals division which consists of a referee section and the board of review. . . . The first stage of claims review lies with a referee who hears the claim de novo. The referee's function in conducting this hearing is to make inquiry in such manner, through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the provisions . . . of the

law. . . . This decision is appealable to the board
. . . . Such appeals are heard on the record of the
hearing before the referee although the board may take
additional evidence or testimony if justice so requires.
. . . Any party, including the administrator, may there-
after continue the appellate process by appealing to the
Superior Court and, ultimately, to [the Appellate and
Supreme Courts]. . . .

"The standard of review for judicial review of this
type of case is well established. In appeals under . . .
§ 31-249b, the Superior Court does not retry the facts
or hear evidence but rather sits as an appellate court
to review only the record certified and filed by the board
of review. . . . The court is bound by the findings of
subordinate facts and reasonable factual conclusions
made by the appeals referee where, as here, the board
. . . adopted the findings and affirmed the decision of
the referee. . . . Judicial review of the conclusions of
law reached administratively is also limited. The court's
ultimate duty is only to decide whether, in light of the
evidence, the board . . . has acted unreasonably, arbi-
trarily, illegally, or in abuse of its discretion. . . . None-
theless, issues of law afford a reviewing court a broader
standard of review when compared to a challenge to
the factual findings of the referee." (Internal quotation
marks omitted.) *Mendes* v. *Administrator, Unemploy-
ment Compensation Act*, 199 Conn. App. 25, 29–30, 235
A.3d 665 (2020).

Section 21a-408p (b) (3) provides in relevant part that
"[n]o employer may refuse to hire a person or may
discharge, penalize or threaten an employee solely on
the basis of such person's or employee's status as a
qualifying patient or primary caregiver under [§§] 21a-
408 to 21a-408n, inclusive. Nothing in this subdivision
shall restrict an employer's ability to prohibit the use
of intoxicating substances during work hours or restrict
an employer's ability to discipline an employee for being
under the influence of intoxicating substances during
work hours."

The plaintiff first claims that the board erroneously
concluded that § 21a-408p (b) (3) was applicable in this
case even though neither the board, nor the appeals
referee, made a finding of fact concerning the reason
for the plaintiff's discharge of the claimant. Specifically,
the plaintiff argues that "this provision would be appli-
cable only if the [plaintiff] discharged the claimant
solely on the basis of his status as a qualifying patient
under PUMA."[8] The plaintiff's argument is misplaced
because it would only be necessary to determine
whether an adverse employment action was made
"solely on the basis of such person's or employee's
status as a qualifying patient" if the question at issue
concerned the legality of the claimant's *discharge*. Gen-
eral Statutes § 21a-408p (b) (3). Here, the legality of the
discharge was not at issue. As the board aptly stated,

the issue before it was "whether the claimant's violating the last chance agreement constituted wilful misconduct such that he is disqualified from receiving unemployment benefits." Because § 21a-408p (b) (3) is relevant to the reasonableness of the last chance agreement, on which the plaintiff bases its claim that the claimant's employment was terminated for wilful misconduct, the board properly considered it in the resolution of this case.

The foregoing conclusion leads us to the plaintiff's next claim on appeal, that the board erroneously concluded that the claimant was not discharged for wilful misconduct. "Whether the circumstances of an employee's termination constitute wilful misconduct on the employee's part is a mixed question of law and fact." (Internal quotation marks omitted.) *Tosado* v. *Administrator, Unemployment Compensation Act*, 130 Conn. App. 266, 276, 22 A.3d 675 (2011).

Under § 31-236 (a) (2) (B), an individual is ineligible for unemployment benefits if their discharge resulted from "wilful misconduct in the course of the individual's employment . . . ." The statutory definition of "wilful misconduct" includes a "knowing violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied, provided such violation is not a result of the employee's incompetence . . . ." General Statutes § 31-236 (a) (16). Furthermore, "[t]o establish that an individual was discharged or suspended for wilful misconduct under this definition, pursuant to § 31-236-26b of the Regulations of Connecticut State Agencies," the agency must find that "the rule or policy [is] reasonably applied in that (1) . . . the adverse personnel action taken by the employer is appropriate in light of the violation of the rule or policy and the employer's lawful business interest . . . and (2) . . . there were no compelling circumstances which would have prevented the individual from adhering to the rule or policy." (Internal quotation marks omitted.) *Seward* v. *Administrator, Unemployment Compensation Act*, 191 Conn. App. 578, 581 n.3, 215 A.3d 202 (2019); see also Regs., Conn. State Agencies § 31-236-26b (d).

The plaintiff argues that "[t]here can be no serious question that [the last chance agreement] was reasonable, as the claimant was a firefighter who was admittedly alcohol dependent. . . . The board erred, however, by concluding that the claimant's subsequent status as a qualifying patient under PUMA rendered the last chance agreement unreasonable insofar as it applied to the claimant's marijuana use." The plaintiff asserts that, even though, under PUMA, the claimant's use of marijuana was not a violation of state law, that "does not change the fact that [the claimant] breached a last chance agreement, nor does it render that agreement unreasonable. A contrary argument—that a

voluntary last chance agreement may only forbid criminal conduct—would be untenable." We disagree.

The legality of the claimant's conduct and the reasonableness of the last chance agreement are distinguishable legal issues with separate considerations. An agreement between an employer and an employee can reasonably prohibit certain, otherwise legal behaviors, but it cannot reasonably do so in a way that runs contrary to state law. See Regs., Conn. State Agencies § 31-236-26b (d) ("[t]o find that a rule or policy of an employer was reasonably applied, the Administrator must find . . . that the adverse personnel action taken by the employer is appropriate in light of the violation of the rule or policy and the employer's lawful business interest"); see also id., § 31-236-26b (b) ("the Administrator must find that the rule or policy furthers the employer's *lawful* business interest" (emphasis added)). Highlighting the unreasonable *application* of the last chance agreement under the circumstances of this case, the board concluded that the last chance agreement became unreasonable "as of the date of the claimant's discharge." It is undisputed that the claimant is a qualifying patient entitled to protections under PUMA, which likewise entails protection against employment penalties resulting from the claimant's legal, off-duty use of medical marijuana.[9] General Statutes § 21a-408p (b) (3); see also General Statutes § 21a-408a (a) ("[a] qualifying patient who has a valid registration certificate from the Department of Consumer Protection . . . and complies with the requirements of [PUMA] . . . shall not be subject to arrest or prosecution, penalized in any manner, including, but not limited to, being subject to any civil penalty, or denied any right or privilege, including, but not limited to, being subject to any disciplinary action by a professional licensing board, for the palliative *use* of marijuana" (emphasis added)). Consequently, the board reasonably concluded that, insofar as the last chance agreement operated to allow the plaintiff to terminate the claimant's employment for his palliative use of marijuana, it was unreasonable. See Regs., Conn. State Agencies § 31-236-26b (d). Further, the unreasonable application of the last chance agreement to the claimant's palliative marijuana use forecloses the possibility that the claimant's employment was terminated for wilful misconduct. See General Statutes § 31-236 (a) (16).[10]

Therefore, the decision of the board was not unreasonable, arbitrary, illegal, or an abuse of discretion, and the court was correct in so holding.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the act has been amended by the legislature since the events underlying this appeal; see, e.g., Public Acts, Spec. Sess., June, No. 21-1, § 77; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the act.

[2] General Statutes § 21a-408p provides in relevant part: "(3) No employer

may refuse to hire a person or may discharge, penalize or threaten an employee solely on the basis of such person's or employee's status as a qualifying patient or primary caregiver under sections 21a-408 to 21a-408n, inclusive. Nothing in this subdivision shall restrict an employer's ability to prohibit the use of intoxicating substances during work hours or restrict an employer's ability to discipline an employee for being under the influence of intoxicating substances during work hours."

[3] General Statutes § 31-236 provides in relevant part: "(a) An individual shall be ineligible for benefits . . . (2) (B) [i]f, in the opinion of the administrator, the individual has been discharged or suspended for . . . wilful misconduct in the course of the individual's employment . . . ."

Although § 31-236 has been amended since the events underlying this appeal; see, e.g., Public Acts 2021, No. 21-200, § 3; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] Although not cited in the appeals referee's decision, the term "qualifying patient" is defined by General Statutes § 21a-408 (16), which provides in relevant part: "Qualifying patient means a person who: (A) Is a resident of Connecticut, (B) has been diagnosed by a physician or an advanced practice registered nurse as having a debilitating medical condition, and (C) (i) is eighteen years of age or older . . . ." (Internal quotation marks omitted.)

[5] Section 21a-408p proscribes the termination of a qualifying patient on the basis of the patient's status as such with limited exceptions. One exception provides that termination on the basis of one's status as a qualifying patient is permissible where "required by federal law or required to obtain federal funding . . . ." General Statutes § 21a-408p (b) (3).

The appeals referee, citing board precedent, differentiated firefighters from public trust employees, for whom drug testing is mandated, by stating that "[a] firefighter is hired for his skill and knowledge in fighting fires but is not charged with protecting the public while off duty (such as public trust employees including police officers) and his off-duty conduct does not relate to his job duties or to a legitimate employer interest any more than does the off-duty conduct of other municipal [employees]." The appeals referee thus distinguished the present case, in which "the test taken by the claimant was not part of a drug or alcohol testing program mandated by and conducted in accordance with state or federal law," from cases in which employees were discharged for positive drug tests that were mandated by law. Moreover, the appeals referee concluded that no other state or federal law required termination of the claimant's employment.

Another exception to § 21a-408p exists where qualifying patients are intoxicated during work hours. See General Statutes § 21a-408p (b) (3). However, as we explain subsequently in this opinion, that exception similarly does not apply in the present case.

[6] General Statutes § 31-236 provides in relevant part: "(a) An individual shall be ineligible for benefits . . . (14) [i]f the administrator finds that the individual has been discharged or suspended because the individual has been disqualified under state or federal law from performing the work for which such individual was hired as a result of a drug or alcohol testing program mandated by and conducted in accordance with such law, until such individual has earned at least ten times such individual's benefit rate . . . ."

[7] General Statutes § 31-249b provides in relevant part: "At any time before the board's decision has become final, any party, including the administrator, may appeal such decision, including any claim that the decision violates statutory or constitutional provisions, to the superior court for the judicial district of Hartford or for the judicial district wherein the appellant resides. Any or all parties similarly situated may join in one appeal. . . . An appeal may be taken from the decision of the Superior Court to the Appellate Court in the same manner as is provided in section 51-197b."

[8] The plaintiff also argues that, insofar as the trial court "made its own finding as to the [plaintiff's] reason or reasons for discharging the claimant," it did so improperly and "could not properly have made any such finding" relying solely on the findings of fact from the appeals referee and the board. See General Statutes § 31-249b (requiring court to rely solely on findings of fact made by appeals referee and amended by board on appeals from administrative unemployment benefits decisions). After our review of the board's decision, we conclude that the court did not depart from the findings of fact made by the appeals referee and the board.

[9] Although there are exceptions to the anti-employment discrimination provisions of PUMA; see General Statutes § 21a-408p (b) (3) ("[n]othing in this subdivision shall restrict an employer's ability to prohibit the use of

intoxicating substances during work hours or restrict an employer's ability to discipline an employee for being under the influence of intoxicating substances during work hours"); General Statutes § 31-236 (a) (14) ("[a]n individual shall be ineligible for benefits . . . [i]f the administrator finds that the individual has been discharged or suspended because the individual has been disqualified under state or federal law from performing the work for which such individual was hired as a result of a drug or alcohol testing program mandated by and conducted in accordance with such law, until such individual has earned at least ten times such individual's benefit rate"); the board concluded that these exceptions do not apply in the present case, and the plaintiff has not challenged that conclusion on appeal.

[10] The plaintiff also argues that the board erroneously found that there was good cause or mitigating circumstances for the claimant's violation of the last chance agreement. However, because the unreasonable application of the last chance agreement precludes the denial of benefits on the basis of a violation thereof, we need not decide whether the claimant's status as a qualifying patient under PUMA qualifies as mitigating circumstances in this case. See *Seward* v. *Administrator, Unemployment Compensation Act*, supra, 191 Conn. App. 581 n.3 (identifying both reasonable application of policy and absence of mitigating circumstances as required elements to establish that an individual was discharged or suspended for wilful misconduct); see also Regs., Conn. State Agencies § 31-236-26b (d).